UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JEANNE S.,[1] <br><br>              Plaintiff, <br><br>   vs. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, <br><br>            Defendant. | 5:20-CV-05049-DW <br><br><br> REDACTED ORDER |

**INTRODUCTION**

On August 6, 2020, claimant Jeanne S. filed a complaint appealing the final decision of Andrew Saul[2], the acting Commissioner of the Social Security Administration, finding her not disabled.  (Doc. 1).  Defendant denies claimant is entitled to benefits.  (Doc. 9).  The court issued a briefing schedule requiring the parties to file a joint statement of materials facts ("JSMF").  (Doc. 11).  For the reasons stated below, claimant's motion to reverse the decision of the

---

[1] The Administrative Office of the Judiciary suggested the court be more mindful of protecting from public access the private information in Social Security opinions and orders.  For that reason, the Western Division of the District of South Dakota will use the first name and last initial of every non-governmental person mentioned in the opinion.  This includes the names of non-governmental parties appearing in case captions.

[2] Dr. Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Fed. R. Civ. P. 25(d), Dr. Kijakazi is automatically substituted for Andrew Saul as the defendant in all pending social security cases.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Commissioner (Doc. 21) is granted and the Commissioner's motion to affirm the decision of the Commissioner (Doc. 24) is denied.

## FACTS AND PROCEDURAL HISTORY

The parties' JSMF (Doc. 18) is incorporated by reference.  Further recitation of the salient facts is incorporated in the discussion section of this order.

On December 11, 2016, Ms. S. filed an application for Social Security disability benefits alleging an onset of disability date of July 6, 2016.  (AR at p. 11).[3]  The claim was initially denied on April 21, 2017, and denied upon reconsideration on September 15, 2017.  (AR at p. 11).  Ms. S. requested an administrative hearing on November 14, 2017, and one was held on August 21, 2019.  (AR at p. 11).  On September 18, 2019, the ALJ issued a written decision denying benefits.  (AR at pp. 8-21).  Ms. S. subsequently sought appellate review; her request was denied, making the decision of the ALJ final. (AR at p. 1).  It is from this decision that Ms. S. timely appeals.

The issue before this court is whether the ALJ's decision of September 18, 2019, that Ms. S. was not "under a disability, as defined in the Social Security Act, from July 6, 2016, through [September 18, 2019]" is supported by substantial evidence on the record as a whole.  (AR at pp. 20-21).  See also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001).

---

[3] The court will cite to information in the administrative record as "AR at p. ___."

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580.  The court reviews the Commissioner's decision to determine if an error of law was committed.  Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision."  Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence.  Guilliams v. Barnhart, 393 F.3d 798, 901 (8th Cir. 2005).  A reviewing court may not reverse the Commissioner's decision "'merely because substantial evidence would have supported an opposite decision.'" Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir.

1995)).  Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act.  See <u>Smith</u>, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits under Title XVI.  20 CFR § 416.920(a).  If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled.  <u>Id.</u>  The five-step sequential evaluation process is:

> (1) Whether the claimant is presently engaged in a "substantial gainful activity";  (2) whether the claimant has a severe impairment – one that significantly limits the claimant's physical or mental ability to perform basic work activities;  (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience);  (4) whether the claimant has the residual functional capacity to perform . . .  past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

<u>Baker v. Apfel</u>, 159 F.3d 1140, 1143–44 (8th Cir. 1998); <u>see also</u> <u>Boyd v. Sullivan</u>, 960 F.2d 733, 735 (8th Cir. 1992) (the criteria under 20 CFR § 416.920 are the same under 20 CFR § 404.1520 for disability insurance benefits).

The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations and found Ms. S. was not disabled.  (AR at pp.13-21).

4

## DISCUSSION

Ms. S. identifies the following issues: (1) whether the ALJ erred in finding that Ms. S.'s fibromyalgia, chronic fatigue syndrome (CFS), gastrointestinal disorder, small intestinal bacterial overgrowth (SIBO), and hereditary hemochromatosis were not severe impairments; (2) whether the ALJ's RFC is not supported by substantial evidence as the ALJ erred in finding that Plaintiff's medical conditions of fibromyalgia, CFS, SIBO, and hereditary hemochromatosis were not severe impairments; (3) whether Ms. S.'s credibility should have been rejected; and (4) whether the credibility of third party statements from Samantha S., Elaine P., and Julie H. should have been rejected.  (Doc. 21).

### STEP ONE

At step one, the ALJ determined Ms. S. "has not engaged in substantial gainful activity since July 6, 2016, the alleged onset date" of disability.  (AR at p. 13).

### STEP TWO

At step two, the ALJ must decide whether the claimant has a medically determinable impairment (MDI) that is severe or a combination of impairments that are severe.  20 CFR § 404.1520(c).  An MDI can only be established by an acceptable medical source.  20 CFR § 404.1513(a).  Accepted medical sources include, among others, licensed physicians.  Id.  "It is the claimant's burden to establish that [his] impairment or combination of impairments are severe."  Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).

5

The regulations describe "severe impairment" in the negative.  "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 CFR § 404.1521(a).  An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  Kirby, 500 F.3d at 707. Thus, a severe impairment is one which significantly limits a claimant's physical or mental ability to do basic work activities.

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. Id. §§ 404.1521(b)(1–6), 416.921(b)(1–6); see Bowen v. Yuckert, 482 U.S. 137, 141, (1987).

The ALJ determined Ms. S. suffered from one severe impairment: thyroid gland disorder; and that several impairments were not severe: (1) gastrointestinal disorder; (2) vertigo disorder; and (3) mental health conditions – depression/bipolar related disorders, and anxiety/obsessive compulsive disorder.  (AR at pp. 13-15).  The ALJ also determined that Ms. S.'s fibromyalgia and chronic fatigue syndrome (CFS) were non-medically

6

determinable impairments.  (AR at pp. 15-16).  The ALJ's decision did not specifically address Ms. S.'s SIBO or Hemochromatosis.  (Doc. 21).

Ms. S. objects to the ALJ's finding that her fibromyalgia, CFS, gastrointestinal disorder, SIBO, and hereditary hemochromatosis were not severe.  (Doc. 21).  The Commissioner argues that the ALJ properly found Ms. S.'s only severe impairment was the thyroid gland disorder.  (Doc. 25).

The ALJ found that Ms. S.'s conditions of depression/bipolar related disorder and anxiety/obsessive compulsive disorder did not significantly limit her ability to perform basic work activities.  (AR at p. 15).  Ms. S. does not challenge this finding.

The ALJ found that Ms. S.'s conditions of fibromyalgia and CFS were non-medically determinable impairments, but even if they were medically determinable impairments, they would not result in any changes to the RFC as Ms. S. would still be able to perform light activities.  (AR at pp. 15-16).   The court will address each impairment.

###    1.    Fibromyalgia and CFS

Ms. S. argues the ALJ found her fibromyalgia and CFS were not medically determinable impairments because the ALJ substituted his own opinions and rejected medical opinions because the doctors relied on Ms. S.'s subjective and self-reported symptoms.  (Doc. 21).  Ms. S. argues that the medical records provide evidence that she was diagnosed with fibromyalgia and CFS and that the conditions are severe.  (Doc. 21).  Ms. S. argues that she has made extensive efforts to obtain help and medical treatment for her

fibromyalgia and CFS.  (Doc. 21).  Ms. S. argues that the ALJ's finding that she did not have a longitudinal history for treatment of fibromyalgia and CFS was in error, as documented by the medical records.  (Doc. 30 at pp. 3-10).

The Commissioner argues that there was only one treatment record detailing fibromyalgia observations, which record was not from an acceptable medical source because it was from a nurse practitioner and nurse practitioners were not recognized as acceptable medical sources for claims filed before March 27, 2017 (Ms. S.'s application was filed on December 11, 2016). (Doc. 25).  The Commissioner also argues that Ms. S.'s medical records did not include the detailed documentation required to establish CFS as a medically determinable impairment.  (Doc. 25).

### A.     The ALJ erred in finding fibromyalgia was a non-medically determinable impairment

Social Security Ruling (SSR) 12-2p instructs an ALJ on how to evaluate whether a claimant has an MDI of fibromyalgia.  A claimant can establish that they have an MDI of fibromyalgia by providing evidence from an acceptable medical source (a licensed medical or osteopathic doctor)[4] documenting that the physician reviewed the persons medical history and conducted a physical exam.  SSR 12-2p(I).  A claimant can establish that they have an MDI of fibromyalgia "if the physician diagnosed [fibromyalgia] and provides the evidence we describe in section II.A. or section II.B. and the physician's diagnosis is not inconsistent with the other evidence in the person's case

---

[4] Defined in 20 CFR 404.1513(a) and 416.913(a)

record." SSR 12-2p(II).  The ALJ evaluates the evidence to see if it is consistent with the 1990 American College of Rheumatology (ACR) criteria as set forth in section II.A. of SSR 12-2, or the 2010 ACR Preliminary Diagnostic Criteria, as set forth in section II.B.  Id.  Section II.A. (1990 ACR Criteria) states that a person has an MDI of fibromyalgia if they have (1) a history of widespread pain in all quadrants of the body (left and right side, above and below the waist) and axial skeletal pain (cervical spine, anterior chest, thoracic spine, or lower back) that has persisted for at least 3 months; (2) at least 11 positive tender points on physical examination; and (3) evidence that other disorders that could cause the symptoms or signs were excluded as laboratory testing and imaging. Section II.B. (the 2010 Preliminary Diagnostics Criteria) requires that (1) the claimant have a history of widespread pain (like Section II.A.); (2) repeated manifestations of six or more fibromyalgia symptoms, especially manifestations of fatigue, cognitive and memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowl syndrome, and (3) evidence that other disorders that could cause the manifestations were excluded.

Here, the ALJ does not specify a criterion under which he is assessing Ms. S.'s fibromyalgia.  The ALJ states that Ms. S. was diagnosed with fibromyalgia in November 2016, and she had 11 of 18 tender points with a symptom severity score of 11 (range of 0-12, 12 being the highest), but discounted the finding because it was based on Ms. S.'s self-reports of pain. (AR at p. 15).

9

The ALJ also concluded that Ms. S. did not have a longitudinal history of treatment specifically for fibromyalgia, but that most records focus on her thyroid related symptoms.  (AR at p. 15).  In addition, the ALJ points to a record from August 16, 2016, that included four areas of concern, but fibromyalgia was not listed as an area of concern and treatment.  (AR at p. 15).  The ALJ noted that the medical records contain some references to fibromyalgia, "but nothing to support the level of significance suggested in the above record."  (AR at p. 15).

The court has previously set forth a detailed analysis of fibromyalgia as an impairment.

> Fibromyalgia typically involves characteristics of chronic pain, stiffness, and tenderness of muscles, tendons, and joints without detectable inflammation. It is common for a large majority of patients with fibromyalgia to suffer from undue fatigue and sleep disorders. . . . Fibromyalgia is considered an arthritis-related condition. However, it is not a form of arthritis . . . since it does not cause inflammation in the joints, muscles, or other tissues or damage them. But fibromyalgia can (like arthritis) cause significant pain and fatigue and it can similarly interfere with a person's ability to carry on daily activities. . . . Mental and/or emotional disturbances occur in over half of people with fibromyalgia. These symptoms include poor concentration, forgetfulness, and memory problems, as well as mood changes, irritability, depression, and anxiety. . . . Other symptoms of fibromyalgia include migraine and tension headaches, numbness or tingling of different parts of the body, abdominal pain related to irritable bowel syndrome. . . . Any of the above symptoms can occur intermittently and in different combinations.

Cumella v. Colvin, 936 F. Supp. 2d 1120, 1126-27 (D.S.D. 2013) (internal citations and quotation marks omitted). "Fibromyalgia is an elusive diagnosis; '[i]ts cause or causes are unknown, there's no cure, and of greatest importance

10

to disability law, its symptoms are entirely subjective.' " <u>Tilley v. Astrue</u>, 580
F.3d 675, 681 (8th Cir. 2009) (quoting <u>Sarchet v. Chater</u>, 78 F.3d 305, 306 (7th
Cir. 1996)).

The court has carefully reviewed the administrative record and gleans the
following from the medical records.  On July 6, 2016, Ms. S. became ill after
working in the yard and being exposed to an animal repellant spray.  (AR at p.
131-132, 557; JSMF 164).  Ms. S. sought medical care in Rapid City on two
occasions in July of 2016, and although she did not report experiencing any
pain, she reported severe issues with fatigue.  (AR at pp. 557, 553-556).  CNP
E. assessed Ms. S. with GERD, chronic fatigue, hemochromatosis, and nausea.
Id.

On August 16-18, 2016, Ms. S. saw a number of medical providers at the
Mayo Clinic, including Charles L., M.D (internal medicine specialist), Allen A.,
MD (neurologist), Micah Y., DO (neurologist), and Kymberly W., MD
(gastroenterology and hepatology specialist).  (AR at pp. 485-510).

In presenting to Dr. L., Ms. S. stated that she had long-standing trouble
with fatigue.  She also relayed that she had been told in the past that she likely
has fibromyalgia and has multiple achy points throughout her body that are
not associated with any trauma and they have been there for a long time
without a clear underlying cause.  After examining Ms. S., Dr. L. noted "[i]f
neurology is satisfied, I do feel that her symptoms of weakness are most likely
related to a chronic fatigue syndrome with fibromyalgia, and I will refer her to
our fibromyalgia clinic." (AR at p. 487).  Dr. A. then conducted an EMG which

11

was normal with no signs of myopathy or neuromuscular junction defect, diagnosing Ms. S. with subjective muscle fatigue.  (AR at pp. 500-501).  Dr. Y. (neurologist) also saw Ms. S. and ruling out any neurologic or muscular cause for her symptoms, diagnosed her with chronic fatigue with feeling of arm heaviness, not otherwise specified, fibromyalgia, hypothyroidism, and hemochromatosis.  (AR at pp. 502-503).

In Dr. L.'s discharge summary in regards to her possible chronic fatigue syndrome he stated, "I did inform Mrs. S. that if everything comes back negative and there is no clear organic cause for her underlying disease that we are able to identify, we have a clinic known as the Fibromyalgia Clinic that can help her deal with at least her chronic fatigue. . . if she does not improve with the current treatment regimen of ferritin as well as a change in her thyroid dosing, that she can be further evaluated in that department."  (AR at pp. 509-510).

On November 7-8, 2016, Ms. S. returned to the Mayo Clinic for an evaluation at the Fibromyalgia and Chronic Fatigue Clinic.  (AR at pp. 511-525).  Ms. S. presented to Shirley J., RN[5] and Kevin F., MD.  On November 7, 2016, Ms. S. reported to Shirley J., RN that she had

> [C]omplaints of pain in the past 7 days which includes the
> following areas: right shoulder, left hip, right hip, left upper arm,
> right upper arm, left lower leg/foot, right lower leg/foot, abdomen,

_____

[5] The Commissioner argues that this constitutes the single treatment record that detailed clinical observations pertaining to fibromyalgia and that the applicable regulations recognizes nurse practitioners as acceptable medical sources only for claims filed on or after March 27, 2017.  (Doc. 25 at p. 7).  The court rejects this argument as the medical record specifically states that the note was in collaboration with Dr. F.

> lower back, upper back and neck … "[m]y back has hurt over the
> years. The widespread pain has been present for around 3 years or
> more, but it has definitely gotten worse."  Pain has been present:
> both sides of the body, above and below the waist, multiple muscle
> groups and multiple joints without redness or swelling.

(AR at p. 511).  Ms. S. reported pain and persistent fatigue present for six

months or more.  Upon examination, Ms. S. had 17/18 standard tender points

that were positive.  (AR at p. 515).  Additionally, Ms. S. was diffusely tender

over most of the muscle groups and a number of joint regions.  Id.  Similarly,

Dr. F. examined Ms. S. and in his summary stated:

> Laboratory tests here are negative/normal for rheumatologic
> disorders and systemic illnesses related to fatigue . . . She has had
> an extensive workup locally and here which showed no underlying
> systemic cause.  Nausea has since improved.  She does have low
> ferritin because of phlebotomy for positive hemochromatosis genes,
> but is not anemic, so this would unlikely be related to chronic
> fatigue. . . The presentation is consistent with fibromyalgia and
> chronic fatigues, which are manifestations of a central
> sensitization disorder.  Some of the fatigue can be explained by
> chronic pain, chronic sleep disorders, mood issues, anxiety, and
> deconditioning.

(AR at p. 519).  Dr. F. diagnosed Ms. S. with fibromyalgia and chronic

multifactorial fatigue, amongst other diagnoses.  (AR at p. 518).

While at the Mayo Clinic, Ms. S. and her husband completed an eight-

hour fibromyalgia and CFS self-management program (AR at pp. 524-25).

Upon Ms. S. returning to Rapid City and continuing through 2019, her medical

providers continue to document Ms. S.s reported symptoms of fatigue, pain,

and other symptoms of fibromyalgia such as cognitive and memory problems,

waking unrefreshed, depression, anxiety disorder, or irritable bowl syndrome.

13

(AR at pp. 40-41, 42, 543, 601, 604-606, 623, 620, 626, 672, 677-678, 679-680, 691, 663, 742-43, 735, 774, 812).

Thus, as to the Section II.A. criteria:

(1) History of widespread pain.  On November 7, 2016, Ms. S. reported to Shirley J., RN that she had

> [C]omplaints of pain in the past 7 days which includes the following areas: right shoulder, left hip, right hip, left upper arm, right upper arm, left lower leg/foot, right lower leg/foot, abdomen, lower back, upper back and neck … "[m]y back has hurt over the years. The widespread pain has been present for around 3 years or more, but it has definitely gotten worse." Pain has been present: both sides of the body, above and below the waist, multiple muscle groups and multiple joints without redness or swelling.

(AR at p. 511).  Ms. S.'s widespread pain is met, and the records establish that the pain persisted for at least 3 months.  Ms. S. complained of pain in the November 7, 2016, record.  (AR at p. 511).  Ms. S. noted that her pain had been present for approximately three years.  (AR at pp. 485-510, 511).  Ms. S. continues to report pain to other providers through 2019.  (AR at pp. 40-41, 679-80, 744).

(2)   Tender points.  The ALJ stated that Ms. S. had 11 of 18 tender points[6] with a symptom severity score of 11 (range of 0-12, 12 being the highest).  (AR at p. 15).

(3)   Evidence that other disorders that could cause the symptoms were excluded.  Ms. S. underwent significant treatment and testing to determine the

---

[6] The medical record contains conflicting information. In the section for physical examination, it states that Ms. S. had 17/18 tender points.  However, the impression/report/plan section of record stats that Ms. S. had at least 11 out of 18 tender points.  (AR at p. 515).

14

cause of her pain and fatigue while at the Mayo Clinic.  She was referred to neurology and underwent an EMG which showed no signs of myopathy or neuromuscular junction defect.

As such, Ms. S. has met the Section II.A. criteria.  As it pertains to the Section II.B. criteria, the ALJ failed to consider the second prong, to-wit: repeated manifestations of six or more fibromyalgia symptoms, especially manifestations of fatigue, cognitive and memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowl syndrome.  Ms. S.'s medical records contain references to all of these conditions, yet the ALJ failed to analyze them in the context of fibromyalgia.  This is reversible error.

### B.   The ALJ erred in finding CFS was a non-medically determinable impairment

Social Security Ruling (SSR) 14-1p instructs the ALJ on how to evaluate claims for CFS.  CFS constitutes an MDI when accompanied by medical signs or laboratory findings.  SSR 14-1p.  In accordance with the CDC case definition of CFS, a physician should make a diagnosis of CFS "only after alternative medical and psychiatric causes of chronic fatiguing illness have been excluded."  Id.

A claimant can establish that they have an MDI of CFS by providing evidence from an acceptable medical source documenting that the physician reviewed the persons medical history and conducted a physical exam.  SSR 14-1p(II).  An MDI of CFS will be found if a licensed physician diagnosed CFS, the diagnosis is not inconsistent with other evidence in the claimant's other records.  Id.  "[T]here must be medical signs or laboratory findings" before a

claimant can be found to have an MDI of CFS.  Id.  One or more medical signs documented over a period of at least six consecutive months help establish an MDI of CFS, to-wit: (1) swollen or tender lymph nodes; (2) pharyngitis; (3) muscle tenderness on repeated examinations including the presence of positive tender points; and (4) other medical signs consistent with other evidence in the record.  Id.  As to laboratory findings, certain laboratory findings establish an MDI of CFS, but the lack of laboratory findings does not exclude an MDI of CFS if there is other clinic evidence.  Id.

Here, the ALJ found that Ms. S. has been treated for fatigue, but in the context of hypothyroidism.  (AR at p. 15).  The ALJ also stated that the record only referenced CFS as a diagnosis a few times, and that the reports were based on Ms. S.'s self-reports, which self-reports have been shown to be questionable in other parts of the record.  (AR at p. 15).  Lastly, the ALJ states that there was no diagnostic or exam findings of significance relating to CFS, and that the record did not satisfy the criteria of SSR 14-1.  (AR at p. 15).

Ms. S. argues that she was diagnosed with CFS at the Mayo Clinic on November 7, 2016, after ruling out other medical and psychiatric causes, and that the diagnosis satisfied the criteria outlined in SSR 14-1p.  (Docs. 21, 30). She argues that her CFS is a medically determinable impairment.  (Docs. 21, 30).  The Commissioner argues that Ms. S.'s medical records do not include the detailed documentation required to establish CFS as a medically determinable impairment because she has not presented evidence that other disorders that could cause the symptoms are excluded, specifically that Ms. S.'s thyroid

disorder could reasonably account for her symptoms, and that has not been excluded. (Doc. 25).

Here, the ALJ's findings are not supported by substantial evidence. Ms. S. reported severe issues with fatigue to Julie M., P.A. of the Rapid City Medical Center on July 15, 2016. (AR at p. 557). On July 26, 2016, CNP Chantel E. assessed Ms. S. with chronic fatigue, noting that she has had a thorough workup. (AR at p. 556). The Mayo Clinic's comprehensive assessment and treatment of Ms. S. clearly diagnose Ms. S. with chronic fatigue syndrome, while ruling out other causes for her fatigue. Despite the ALJ's finding that Ms. S.'s treatment for fatigue was in the context of hypothyroidism, the medical records demonstrate that testing was conducted to determine whether her fatigue could be related to a possible iron deficiency and lack of control of hypothyroidism. (AR at p. 487). To that end, Dr. L. noted, "If neurology is satisfied, I do feel that her symptoms of weakness are most likely related to a chronic fatigue syndrome with fibromyalgia." Id. Dr. L. ordered that Ms. S.'s TSH be tested to see if she was on the proper dosage of medication for her hypothyroidism. Id. Neurology ruled out any neurologic or muscular cause for her symptoms and diagnosed her with chronic fatigue with feeling of arm heaviness, not otherwise specified, fibromyalgia, hypothyroidism, and hemochromatosis. (AR at p. 503). While Dr. W. noted that the hemochromatosis "would certainly be contributing to her fatigue somewhat." (AR at p. 508), there is no indication in the record that Ms. S.'s fatigue is wholly attributable to her hypothyroidism or that her treatment was solely "in

the context of hypothyroidism" as concluded by the ALJ.  On the contrary, in his discharge summary, Dr. L. listed each of the following as separate categories: 1) Nausea; 2) Fatigue; 3) Hypothyroidism; 4) Iron deficiency in the setting of hemochromatosis; and 5) Possible chronic fatigue syndrome.  (AR at p. 509-510).  In regards to the possible chronic fatigue syndrome, Dr. L. stated "I have ordered a chronic fatigue appointment for two months from now, so that if she does not improve with the current treatment regimen of ferritin as well as a change in her thyroid dosing, she can be further evaluated in that department."  (AR at p. 509-510).  Upon testing Ms. S.'s TSH levels in regards to her hypothyroidism, the results revealed that her TSH was only slightly elevated and she was barely outside the normal range.  Id.

Upon return to the Mayo Clinic a few months later, Ms. S. presented to S. Vincent R., M.D. in the hematology department and he found, "[n]o further testing needed.  The increased platelets are from iron deficiency.  With iron replacement, the hemoglobin has increased and platelets are in normal range.  Increased platelet count due to reactive thrombocytosis that occurs with iron deficiency does not need any intervention."  (AR at p. 527-528).  However, Ms. S.'s pain and fatigue had not improved, despite the adjustment in medication to her thyroid and hemochromatosis conditions.  (AR at p. 511-523).  Dr. F. from the Fibromyalgia and Chronic Fatigue Internal Medical department examined Ms. S. and found that in regard to Ms. S.'s pain and fatigue:

> Laboratory tests here are negative/normal for rheumatologic
> disorders and systemic illness related to fatigue. She has
> nonrestorative sleep but a negative overnight oximetry her.  She
> has migraine headaches twice per month.  Recently this was

18

> associated with nausea.  She has had chronic nausea and worsened fatigue and fibromyalgia since July.  It is unclear what transpired at the time, it may have been a viral event.  She has had extensive workup locally and her which showed no underlying systemic cause.  Nausea has since improved.  She does have low ferritin because of phlebotomy for positive hemochromatosis genes, but is not anemic, so it would unlikely be related to chronic fatigue . . .
>
> The presentation is consistent with fibromyalgia and chronic fatigue.

(AR at p. 519).  Upon return to Rapid City, Ms. S. consistently and repeatedly reported ongoing issues with fatigue over the course of several years. (AR at pp. 40-41, 42, 543, 601, 604-606, 623, 626, 663, 672, 679-680, 690-694, 735, 744, 812).  The ALJ's conclusion that Ms. S.'s treatment for fatigue was only in the context of hypothyroidism and as a separate diagnosis of chronic fatigue syndrome is not a medically determinable condition, is not supported by the medical records.

The court also notes that despite the ALJ giving great weigh to the opinions of the State agency physical and psychological consultants (AR at p. 20), the ALJ seemingly ignored the findings made by both Kevin W., M.D. and Robin C.-V., Ph.D. that Ms. S.'s fibromyalgia and CFS were severe medically determinable impairments.  (AR at pp. 153, 166).

**B.    Reversal is the appropriate remedy**

The Commissioner argues that because the ALJ found at least one severe impairment, any failure to include fibromyalgia, chronic fatigue syndrome or other impairments as severe impairments at step two would be harmless error. (Doc. 25 at pp. 9-10).  This argument is without merit.  Failure to consider a

19

known impairment at step two is a ground for reversal.  <u>Colhoff v. Colvin</u>, No. CIV. 13-5002, 2014 WL 1123518, at *5 (D.S.D. Mar. 20, 2014).

Failure to identify all of a claimant's severe impairments impacts not only the ALJ's credibility[7] findings, consideration of activities of daily living, but most importantly, a claimant's residual functional capacity.  <u>Thurston v. Colvin</u>, CIV. 15-5024, 2016 WL 5400359 at *5 (D.S.D. Sept. 27, 2016). "[F]ailure to consider plaintiff's limitations . . . infect[s] the ALJ's . . . further analysis under step four."  <u>Spicer v. Barnhart</u>, 64 Fed. Appx. 173, 178 (10th Cir. 2003).  If a claimant's severe impairments must be revisited, the subsequent steps in the evaluation process must be reanalyzed.

## ORDER

Based on the above analysis, it is hereby

ORDERED that Plaintiff's motion to reverse the decision of the Commissioner (Doc. 21) is granted; and it is further

ORDERED that the Commissioner's motion to affirm the decision of the Commissioner (Doc. 24) is denied; and it is further

---

[7] The court notes a factual error in the ALJ's credibility findings. The ALJ concluded that Ms. S.'s activities were inconsistent with her allegations of disability.  (AR at p. 17).  The ALJ relied on the July 2016 treatment note where Ms. S. was doing yard work and sprayed goose repellant which caused her to start feeling unwell and had difficulty raising her arms over her head.  (AR at pp. 17, 557).  Ms. S. correctly points out that this is the incident that triggered Ms. S.'s current impairments and thus is not inconsistent with her complaints. (Doc. 21).   There are no further representations of Ms. S. engaging in anything other than small bouts of yardwork.

ORDERED that, pursuant to sentence four of 42 U.S.C. §405(g), the case is remanded to the Commissioner for rehearing consistent with the court's analysis.

DATED this 31st day of March, 2022.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge